UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| GRADY JOE CAREATHERS,       ) | |
| ) | |
| Plaintiff,       ) | |
| ) | |
| VS.       ) | No. 18-1025-JDT-cgc |
| ) | |
| TENNESSEE DEPARTMENT OF       ) | |
| CORRECTION, ET AL.,       ) | |
| ) | |
| Defendants.       ) | |

ORDER TO MODIFY THE DOCKET,
DENYING REQUEST FOR APPOINTMENT OF COUNSEL,
PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT
PROCESS BE ISSUED AND SERVED ON DEFENDANT PINNER

On February 2, 2018, Plaintiff Grady Joe Careathers, who at the time was incarcerated at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee,[1] filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint addresses events that occurred at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee. (ECF No. 1 at PageID 1.) The Court issued an order on February 9, 2018, granting leave to proceed *in*

---

[1] On July 15, 2019, the Clerk docketed a letter from the TTCC advising that Careathers had been released from prison. (ECF No. 6.) Though Careathers has not notified the Court of any change of address, the letter from the TTCC provides the address the facility had on file for him. (*Id.*) The Clerk is DIRECTED to modify the docket to show Careathers's address of record as 2106 Bransford Ave., Nashville, TN 37204.

*forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as the Tennessee Department of Correction (TDOC); Lieutenant John Pinner; Sergeant First Name Unknown (FNU) Bonner; Sergeant Vivian Oliver, Grievance Board Chairperson; Nurse FNU Hopkins; Captain FNU Sanders; CoreCivic; Damon Hininger, President and CEO of CoreCivic; the Town of Whiteville and Hardeman County;[2] and Centurion Medical Liability.

Careathers alleges that on May 13, 2017, he was screened by the WCF medical department before being taken to the Segregation Unit. (ECF No. 1 at PageID 2.) Careathers was cleared by medical to be escorted to Segregation by Lt. Pinner and Sgt. Oliver, but while they still were in the medical waiting room, he and Sgt. Oliver "exchanged verbal-words." (*Id.*) This allegedly prompted Lt. Pinner to pick up the handcuffed Careathers and slam or throw him to the floor. (*Id.*) Careathers alleges his right foot became tangled with his other leg as he fell, and he broke his ankle. (*Id.*) He alleges that Capt. Sanders, Sgt. Oliver, and Sgt. Bonner watched the altercation take place but refused to take action or order it to stop. (*Id.* at PageID 2-3.) According to Careathers, Sanders previously had "made an inappropriate statement" that he would "teach plaintiff to keep his mouth shut and not curse his female staff." (*Id.* at PageID 3.)

---

[2] The complaint names the "County of Whiteville" as a Defendant, but there is no such entity. The Town of Whiteville is located in Hardeman County, Tennessee. *See* www.mtas.tennessee.edu/city/whiteville. It is unclear whether Plaintiff intended to sue the Town, the County, or both.

Sanders and Pinner helped Careathers get to his feet and took him to the nurse's station, where Nurse Hopkins examined Careathers. (*Id.* at PageID 2.) Nurse Hopkins wrapped Careathers's ankle, gave him ibuprofen and an ice pack, and ordered an X-ray. (*Id.*) Careathers was taken to a medical holding cell, where Sgt. Bonner told him he would not receive any X-rays and was being transferred to segregation pending the outcome of a disciplinary hearing. (*Id.*) Careathers eventually did receive an X-ray about one month later. (*Id.*)

In July 2017, Careathers was taken to a hospital, where he was informed he would need physical therapy and that his ankle would have to be "re-broken to grow back correctly." (*Id.* at PageID 3.) Sometime in mid-July 2017, Careathers was transferred to the TTCC. (*Id.*) In September 2017, a doctor at TTCC ordered that Careathers see a "Tissue Specialist" for his ankle, and in October 2017 he received a medical boot for his ankle. (*Id.*)

Careathers sues the Defendants in their individual and official capacities. (*Id.* at PageID 2.) He seeks at least $200,000 in compensatory and punitive damages from each Defendant.[3] (*Id.*) He also seeks an injunction ordering the Defendants to provide "adequate medical care" and send inmates to outside medical appointments, "stop the excessive force against inmate's [sic]," and "stop covering-up inmate's [sic] being assaulted by staff." (*Id.*)

---

[3] Elsewhere in his complaint, Careathers requests "$100,000-200,000" in damages "for pain and suffering" and $500,000 in compensatory and punitive damages. (ECF No. 1 at PageID 5.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Careathers filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against the TDOC. When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Furthermore, any claims against TDOC would be treated as claims against the State of Tennessee, and Careathers has no valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

5

U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)).

Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Careathers's claims against the TDOC are therefore DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

Careathers's complaint also contains no allegations against Defendant Hininger or Centurion Medical Liability. He therefore fails to state a claim against either of these Defendants.

Careathers has sued "Whiteville County." [4] However, a local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original);

---

[4] *See supra* note 2.

*see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Careathers does not allege that he suffered an injury because of an unconstitutional policy or custom of either the Town of Whiteville or Hardeman County. He has therefore failed to state a claim against either local governmental entity.

To the extent Careathers intends to sue WCF employees and officials in their official capacities, his claims are construed as against their employer, Defendant CoreCivic, a private corporation which operates the WCF.[5] "A private corporation that performs the

---

[5] *See* https://www.tn.gov/correction/sp/state-prison-list/whiteville-correctional-facility.html ("Whiteville Correctional Facility . . . is managed by CoreCivic, a private corrections management firm.").

traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the same standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). Careathers does not allege that a policy or custom of CoreCivic was the "moving force" behind the alleged violation of his constitutional rights. He has therefore failed to state a claim against the WCF/CoreCivic or against any Defendant in his or her official capacity.

Careathers's allegation that Lt. Pinner threw him to the ground causing him to break his ankle amounts to a claim of excessive force under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v.*

*McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38.

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). For a claim of excessive force, the "core judicial inquiry" is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (quotation omitted).

Careathers alleges that, while he was handcuffed and being taken to segregation by at least four corrections officers, he and Sgt. Oliver began arguing. Careathers alleges this escalated into a physical altercation, during which Pinner pushed or threw Careathers to the ground hard enough that his feet and legs became tangled so that he broke his ankle. He alleges that, at the time of the altercation, he was "fully restrain with handcuffs behind his back" and "posed 'no' threat to anyone." (ECF No. 1 at PageID 1.) The Sixth Circuit has held that the "takedown" of a handcuffed inmate, who was "surrounded by four jail officials," in response to the inmate making an offensive remark was objectively unreasonable under a Fourth Amendment analysis. *Burgess v. Fischer*, 735 F.3d 462, 474 (6th Cir. 2013); *see also Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) ("[S]triking a neutralized suspect who is secured by handcuffs is objectively unreasonable.");

9

*McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (asserting that there is no need for any force when a detainee is handcuffed, non-threatening, and not trying to flee).

Similar to the facts in *Burgess*, Careathers alleges he was handcuffed and restrained, surrounded by several officers, and not physically resistant. *See Burgess*, 735 F.3d at 475. Careathers's allegations sufficiently state a claim that Lt. Pinner used unnecessary and excessive force in pushing or throwing Careathers to the ground in violation of the Eighth Amendment.

Careathers also alleges that Capt. Sanders, Sgt. Oliver, and Sgt. Bonner watched the altercation take place but refused to act or order it to stop. Careathers does not allege that any of these officers participated in the physical altercation, and they cannot be liable for their mere presence it. *Burgess*, 735 F.3d at 475. To be liable for the altercation, Careathers must show that the officers present either supervised Pinner or owed Careathers a duty of protection. *Id.* To have owed Careathers a duty of protection, there must be a showing that the officers "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Id.* (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

Careathers does not state a claim against Sanders, Oliver, or Bonner. He does not allege that any of these officers supervised Lt. Pinner or knew that the verbal altercation would escalate into a physical one where Pinner would use excessive force. From the allegations, the incident escalated quickly from an exchange of words to a one-sided exchange of force. The incident simply did not last long enough for the officers "to both perceive what was going on and intercede to stop it." *Burgess*, 735 F.3d at 475 (citing

cases). Though Careathers suggests Capt. Sanders at some point said he would "teach plaintiff to keep his mouth shut," Careathers does not suggest that Sanders made this comment in front of Pinner or by his comment was directing Pinner to take Careathers to the ground. These allegations are insufficient to hold Sanders, Oliver, or Bonner liable for Pinner's use of force.

Careathers does not allege he was denied appropriate medical care by Nurse Hopkins or other medical officials at the WCF. To the extent he seeks to raise such a claim, he fails to state one. A claim that an inmate was denied appropriate medical care arises under the Eighth Amendment. *Farmer*, 511 U.S. at 832. As with a claim of excessive force, a claim of deliberate indifference to serious medical needs must satisfy the objective and subjective components of an Eighth Amendment claim. *Id.* at 834-35.

Careathers alleges that he was immediately taken to the nurse's station after Lt. Pinner took him down. Nurse Hopkins wrapped his ankle, gave him pain medication and an ice pack, and ordered an X-ray. Though he did not receive an X-ray until about a month after his injury, Careathers does not allege any other nurses or medical officials knew of his still-significant injury and deliberately refused to treat him. In fact, he alleges that medical personnel ordered the X-ray when they saw Careathers limping. (ECF No. 1 at PageID 2-3.) Careathers was treated at a hospital, where he received the X-ray and a medical boot while his ankle healed. None of these allegations support a claim that Nurse Hopkins or other officials at WCF were deliberately indifferent to his medical needs.

Careathers also alleges that "the overcrowding of this Tennessee Prison System has caused the above stated concerns." (ECF No. 1 at PageID 6.) He asserts the Court "should

11

order prison officials to submit a written report on how they proposed [sic] to correct . . . the overcrowding of the Tennessee State Prison System." (*Id.*)  Prison overcrowding is not in itself a constitutional violation but "may be viewed as cruel and unusual punishment only if it led to 'deprivations of essential food, medical care, or sanitation' or if it 'increase[d] violence among inmates or create[d] other conditions intolerable for prison confinement.'" *Gilland v. Owens*, 718 F. Supp. 665, 688 (W.D. Tenn. 1989) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)); *see generally Brown v. Plata*, 563 U.S. 493 (2011).  Careathers does not describe his putative claim of overcrowding or explain how overcrowding at WCF led to the altercation with Lt. Pinner or his allegedly inadequate medical treatment.  He therefore fails to state a claim under the Eighth Amendment.[6]

Because Careathers is no longer at the WCF, his request for an injunction against WCF officials or staff is moot.  *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same); *Tramber v. Pleasant*, No. 4:12CV-P31-M, 2012 WL 4594339, at *5 (W.D. Ky. Oct. 2, 2012) (inmate's claim for a transfer and medical care moot when he was transferred to another facility).

---

[6] Careathers in passing also references having his complaint class-certified under Federal Rule of Civil Procedure 23(b)(2). (ECF No. 1 at PageID 7.)  A class action may be maintained under Rule 23 only if the claimant satisfies the four prerequisites listed in Rule 23(a) and the additional prerequisites of one of the listed types of class actions under Rule 23(b).  *See* Fed. R. Civ. P. 23(a)-(b); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945-46 (6th Cir. 2011). Careathers does not attempt to explain how his complaint, listing him as the sole Plaintiff, meets any of the prerequisites of either section.  To the extent Careathers seeks class certification for any of his claims, certification is DENIED.

In conclusion, the Court DISMISSES Careathers's claims against the TDOC and Defendants Bonner, Oliver, Hopkins, Sanders, Hininger, CoreCivic, County of Whiteville, and Centurion Medical for failure to state a claim on which relief can be granted and for seeking monetary relief against a Defendant immune from such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).

It is ORDERED that the Clerk shall issue process for Defendant Pinner and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Pinner pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Careathers shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendant Pinner. Careathers shall make a certificate of service on every document filed. Careathers shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[7]

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[7] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.